UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

CHRISTINA LESLIE, individually and on
behalf of all others similarly situated,

                Plaintiff,

        -against-

THOMSON REUTERS CORPORATION,

              Defendant.

-------------------------------------------------------X

: CASE NO. 1:22-CV-07936-JHR

: **ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)**

**BAKER & HOSTETLER LLP**

Eric R. Fish
45 Rockefeller Plaza
New York, NY 10111
Tel: 212.589.4200
Fax: 212.589.4201
efish@bakerlaw.com

Joel Griswold (*pro hac vice*)
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
Tel: 407.649.4088
Fax: 407.841.0168
jcgriswold@bakerlaw.com

Bonnie Keane DelGobbo (*pro hac vice*)
Amy L. Lenz (*pro hac vice*)
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Tel: 312.416.6200
Fax: 312.416.6201
bdelgobbo@bakerlaw.com
alenz@bakerlaw.com

*Attorneys for Reuters News & Media Inc., sued herein as
Thomson Reuters Corporation*

# TABLE OF CONTENTS

**Page**

I.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM......................................................4

    A.   Standard of Law......................................................................................4

    B.   Plaintiff Does Not Allege That Reuters Is A "Video Tape Service Provider."..............................................................................................5

    C.   Plaintiff Does Not Allege That She Is A "Consumer" Protected By The VPPA. ......................................................................................................7

    D.   Plaintiff Does Not Allege That Reuters Disclosed PII. ...........................8

        i.   Plaintiff Fails To Allege That Reuters Disclosed Plaintiff's PII. ...............8

        ii.   Plaintiff Does Not Allege That Reuters Disclosed Plaintiff's Viewing History.......................................................................................12

        iii.   Plaintiff Does Not Allege That Reuters Knowingly Disclosed PII. ..........12

        iv.   The Information That Plaintiff Alleges Reuters Disclosed Is Excluded From The VPPA. ...................................................................13

    E.   Plaintiff Does Not Plead Actual Damages or Legally Sufficient Injury................14

        i.   Plaintiff Does Not Plead Actual Damages as Required Under VPPA. ......................................................................................................14

        ii.   Any "Injury" Plaintiff Allegedly Suffered Is Not Within the "Zone of Interests" The VPPA Protects................................................................16

II.   THE VPPA, AS APPLIED TO REUTERS, VIOLATES THE FIRST AMENDMENT......................................................................................................18

III.   CERTAIN PARTS OF THE VPPA ARE CONSTITUTIONALLY DEFECTIVE ON THEIR FACE.............................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................................4

*Bank of Am. Corp. v. City of Miami,*
   137 S. Ct. 1296 (2017)........................................................................................17, 18

*Barr v. Am. Ass'n of Political Consultants, Inc.,*
   140 S. Ct. 2335 (2020)............................................................................................21

*Bell Atl. Corp. v. Twombly,*
   550 U.S.544 (2007)...................................................................................................4

*Broadrick v. Oklahoma,*
   413 U.S. 601 (1973)............................................................................................18, 20

*Brown v. Entertainment Merchants Assoc.,*
   131 S.Ct. 2729 (2011)..............................................................................................20

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,*
   447 U.S. 557 (1980).................................................................................................19

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir. 2002).......................................................................................5

*Daniel v. Cantrell,*
   375 F.3d 377 (6th Cir. 2004) ...................................................................................21

*Eichenberger v. ESPN, Inc.,*
   C14–463, 2015 WL 7252985 (W.D. Wash. May 7, 2015)........................................9

*Ellis v. Cartoon Network, Inc.,*
   2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) .............................................................9

*Ellis v. Cartoon Network, Inc.,*
   803 F.3d 1251 (11th Cir. 2015) ................................................................................8

*In re Facebook, Inc. Internet Tracking Litig.,*
   956 F.3d 589 (9th Cir. 2020) ..................................................................................11

*Free Enterprise Fund v. Public Company Accounting Oversight Bd.,*
   561 U.S. 477 (2010)................................................................................................21

*Green v. Dep't of Educ. of City of New York*,
No. 20-3785-CV, 2021 WL 5022654 (2d Cir. Oct. 29, 2021)..................................4

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ........................6

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........................9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014).....................................................................................16, 17, 18

*Locklear v. Dow Jones & Co.*,
101 F. Supp. 3d 1312 (N.D. Ga. 2015) ................................................................9

*In re Meta Pixel Healthcare Litig.*,
No. 22-cv-03580, 2022 WL 17869218 (Dec. 22, 2022, N.D. Cal. 2022)...............11

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ...........................................................................17

*In re Nickelodeon Consumer Privacy Litig.*,
2014 WL 3012873 (D.N.J. July 2, 2014).............................................................9

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)...............................................................................8

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ..........................................................................8

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)..................................................8, 9, 10, 17

*Stark v. Patreon*,
No. 3:22-cv-03131 (N.D. Cal. Dec. 5, 2022)................................................2, 7, 19

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...............................................................6

**Statutes**

18 U.S.C. § 2701(a)(4)............................................................................................7

18 U.S.C. § 2710 et. seq.................................................................................. *passim*

**Other Authorities**

S. Rep. 100–599 (1988) ...................................................................................6, 17

Defendant Reuters News & Media Inc., sued herein as Thomson Reuters Corporation, (collectively with its affiliates, "Reuters"), respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Class Action Complaint pursuant to Rule 12(b)(6).

## **INTRODUCTION**

Since the 1850s, using just telegraph cables and a fleet of carrier pigeons, Reuters—the news and media division of Thomson Reuters—has provided news and information to all corners of the world. Through the hard work of its thousands of journalists, Reuters supplies accurate, unbiased reporting to news organizations globally while also operating a free news website, Reuters.com.

Plaintiff Christina Leslie ("Plaintiff") alleges she signed up in 2022 for a free email newsletter from Reuters and separately watched some short news clips on Reuters.com. Plaintiff now brings a Class Action Complaint alleging violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), a statute that famously stems from the disclosure of information about the video rental history of the family of Judge Robert H. Bork.

Decades after the VPPA was passed, and in the current digital, web-based age where few video stores exist, Plaintiff nakedly asserts that Reuters violated the VPPA because it allegedly shared users' video viewing information and personally identifiable information ("PII") to Facebook through a "pixel"—an industry-standard tracking tool. Plaintiff makes such allegations while simultaneously acknowledging that Reuters plainly disclosed its use of pixels to users and expressly pleading that it was ***Plaintiff's own web browser***—not Reuters—that actually transmitted data to Facebook.

The Complaint should be dismissed pursuant to Rule 12(b)(6) on the following grounds, each sufficient for dismissal.

*First*, Plaintiff does not allege facts showing Reuters is a "video-tape service provider" under the plain language of the VPPA. Indeed, the U.S. government has explained in another action that the VPPA "***does not apply to news organizations***, advocacy groups, or other entities ***whose mission is to publicize information of public import***." *Stark v. Patreon*, No. 3:22-cv-03131, at 11 (N.D. Cal. Dec. 5, 2022) (ECF No. 49-1).

*Second*, Plaintiff does not allege that she is a "consumer" protected by the VPPA.

*Third*, Plaintiff does not allege facts plausibly showing that Reuters disclosed Plaintiff's PII—much less *knowingly* disclosed PII.

*Fourth*, Plaintiff does not and cannot allege facts showing she is a "person aggrieved" or has suffered actual damages.

Alternatively, Plaintiff's claim should be dismissed as applied to Reuters because the VPPA would unconstitutionally restrict commercial speech in violation of the First Amendment.

For the foregoing reasons and as detailed below, Plaintiff's Complaint should be dismissed with prejudice in its entirety.

## **BACKGROUND**

Reuters is a global news organization and the owner of Reuters.com. (Compl. ¶¶ 1, 13.) Plaintiff filed a putative class action against Reuters under the VPPA, alleging she signed up in 2022 for a Reuters email newsletter and separately watched news clips on Reuters.com. (Compl. ¶¶ 3-4, 20, 32, 46-47.) Plaintiff alleges that "[b]y doing so, Plaintiff's Personal Viewing Information was disclosed to Facebook pursuant to the systematic process described herein," but that "Plaintiff never gave Defendant express written consent to disclose her Personal Viewing Information." (*Id.*)

Plaintiff then alleges that, "[i]mportantly, nowhere in Reuters' Terms of Service or Privacy Policy is it disclosed that Defendant will share digital subscribers' private and protected Personal Viewing Information with third parties, including Facebook." (Compl. ¶ 29.) However, the Privacy Statement, which is incorporated by reference into Plaintiff's Complaint (*see. e.g.*, Compl. ¶¶ 27-29), *does* specifically disclose that Reuters may collect "personal information" including:

- **Contact Information**, such as name, alias, address, phone number, social media user ID, email address, and similar contact data.…
- **Device & Browser Information**, such as . . . advertising identifiers, cookie identifiers and information, and similar data.
- **Usage Information and Browsing History**, such as . . . content interactions (including searches, views, downloads, prints, shares, streams, and display or playback details), and user journey history (including clickstreams and page navigation, URLs, timestamps, content viewed or searched for, page response times, page interaction information (such as scrolling, clicks, and mouse-overs), and download errors), advertising interactions (including when and how you interact with marketing and advertising materials, click rates, purchases or next steps you may make after seeing an advertisement, and marketing preferences), and similar data.…
- **Social Media and Online Content**, such an information in social media and online profiles, online posts, and similar data…

(Declaration of Phil Andraos ("Andraos Decl.") ¶ 4, Ex. 1, at 3-4.) The Privacy Statement further states that we "may work with certain third party social media providers . . . [that] may be able to collect information about you, including your activity on our Services," and we "may share your personal information with advertisers . . . [that] may also target advertisements on third party websites based on cookies or other information indicating previous interaction with us and/or our Services." (Andraos Decl., ¶ 4, Ex. 1, at 7-8.) The Privacy Statement explains that "[y]ou can control cookies and tracking tools" and includes a link to information about "how to manage how we and our partners use cookies and other tracking tools." (Andraos Decl., ¶ 4, Ex. 1, at 9.)

Nonetheless, Plaintiff alleges Reuters unlawfully shared her information with Facebook. (Compl. ¶¶ 36-43.) Specifically, Plaintiff alleges Reuters shares Plaintiff's "Personal Viewing

Information," defined by Plaintiff as the "digital subscribers' unique FID [Facebook ID] and video content viewed – together as one data point to Facebook." (Compl. ¶¶ 5, 40.)

Yet Plaintiff's own description of how the FID works shows that Reuters does not possess or disclose Plaintiff's FID, but rather Plaintiff's own web browser transmits this data. (Compl. ¶¶ 33-35, 40.)

## ARGUMENT

## I. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM.

Plaintiff fails to state a claim for violation of the VPPA because Plaintiff fails to plausibly allege that: (1) Reuters is a "video tape service provider"; (2) Plaintiff is a "consumer" protected by the VPPA; (3) Reuters disclosed PII or video viewing information, much less *knowingly* did so; or (4) Plaintiff was injured by Reuters' disclosure. Further, even if Plaintiff had adequately pled these elements, the information that Plaintiff alleges Reuters disclosed is excluded from the VPPA.

### A. Standard of Law

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint may not rest on "'naked assertion' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint is also "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Green v. Dep't of Educ. of City*

*of New York*, No. 20-3785-CV, 2021 WL 5022654, at *4 (2d Cir. Oct. 29, 2021). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Here, because Plaintiff's Complaint explicitly references Reuters' Privacy Statement but does not include the full text, this Court can, and should, consider its entirety when ruling on this Motion.

### B. Plaintiff Does Not Allege That Reuters Is A "Video Tape Service Provider."

The VPPA applies only to a "video tape service provider" ("VTSP"), which it defines as "any person, ***engaged in the business***, in or affecting interstate or foreign commerce, of ***rental, sale, or delivery*** of ***prerecorded video cassette tapes or similar audio visual materials***." 18 U.S.C. § 2710(a)(4) (emphasis added). Plaintiff does not allege facts that plausibly show Reuters is a VTSP. Rather, in conclusory fashion, Plaintiff simply alleges, the "VPPA prohibits 'video tape service providers,' such as Reuters.com, from knowingly disclosing consumers' personally identifiable information . . ." (Compl. ¶ 2.) Outside of this allegation, Plaintiff does nothing to support her naked assertion that Reuters is a VTSP.

***First***, Plaintiff's allegations make clear that her claims stem from viewing *online content*, not "prerecorded video cassette tapes." (*E.g.*, Compl. ¶¶ 1, 4-7, 12.) The Complaint does not contain a single allegation that Reuters is engaged in the business of rental, sale, or delivery of prerecorded video cassette tapes. (*See generally* Compl.)

***Second***, Plaintiff does not allege Reuters is engaged in the business of renting, selling or delivering "similar audio-visual materials." Indeed, "Congress's concern with privacy and protecting the confidentiality of an individual's choices is relevant context to the Senate Report's discussion of 'similar audio visual materials, such as laser discs, open-reel movies, and CDI

technologies.'" *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012) (citing S.Rep. No. 100–599 at 12). The "similar" materials contemplated by Congress were the hours-long video recordings such as motion pictures ("open-reel movies"; *see also* "laser disc," (def. 1), defined as, "one containing a video recording (as of a motion picture)" (https://www.merriam-webster.com/dictionary/laser%20disc)) made available at the typical brick-and-mortar stores that existed when Congress drafted the VPPA. Such types of "audio visual materials" differ greatly from the short news clips on Reuters.com today. And Plaintiff does not allege that Congress considered, yet alone intended, to regulate businesses that distribute such news clips.

**Third**, unlike Hulu—whose entire business is based on providing video content to users—Reuters is a business engaged in providing news.[1] *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (in the VPPA context, "'business' connotes 'a particular field of endeavor,' *i.e.*, *a focus of the defendant's work*" (emphasis added)). Simply making video clips available online does not make Reuters a business "engaged in" the rental, sale, or delivery of "similar audio visual materials." If that were the case, quite literally *any person* that provides video media *in any capacity* would fall under the definition of a VTSP. *See In re Vizio, Inc.*, 238 F. Supp. 3d at 1221 ("[T]o be engaged in the business of delivering video content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose.").

**Finally**, and significantly, the United States itself has intervened in another pending VPPA class action and unambiguously stated that the VPPA "does not apply to news organizations . . .

---

[1]  *See* Compl. ¶ 12 n.1 (citing Reuters.com "Reuters the Facts" available at https://www.thomsonreuters.com/content/dam/openweb/documents/pdf/reuters-news-agency/fact-sheet/reuters-fact-sheet.pdf ("Each day 2,500 journalists in nearly 200 locations around the globe deliver unparalleled *international and national news*….") (emphasis added).

or other entities whose mission is to publicize information of public import." *See Stark v. Patreon*, No. 3:22-cv-03131, at 11 (N.D. Cal. Dec. 5, 2022) (ECF No. 49-1). In *Stark*, the plaintiff claimed that an online subscription service company violated the VPPA. The government's intervening brief explained that "[t]he reach of the statute is thus demonstrably constrained. ***Notably, it does not apply to news organizations***, advocacy groups, or other entities whose mission is to publicize information of public import." *See id.* (emphasis added).

Reuters is not a VTSP because it does not provide pre-recorded cassette tapes, nor is Reuters substantially involved in the conveyance of video content or significantly tailored to serve that purpose. Rather, Reuters is a *news organization* not subject to the VPPA. Therefore, Plaintiff's VPPA claim should be dismissed with prejudice.

**C.** **Plaintiff Does Not Allege That She Is A "Consumer" Protected By The VPPA.**

The VPPA defines a consumer as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Here, Plaintiff does not allege she rented or purchased any goods or services from Reuters. Rather, Plaintiff asserts she is a "subscriber" because she allegedly signed up for a Reuters email newsletter. (Compl. ¶¶ 20, 46.) Importantly, however, Plaintiff does not—and could not—allege that she accessed or watched any videos through her newsletter sign-up or that the newsletter even includes any videos. Instead, Plaintiff alleges that she viewed videos on Reuters' *website*, Reuters.com (Compl. ¶¶ 12, 32, 47)— actions which are separate and apart from her alleged "subscription" to any email newsletter.

Moreover, Plaintiff cannot be considered a "consumer" of goods or services through her alleged receipt *of a newsletter* because the newsletter does not involve goods or services *from a VTSP*. A VTSP is defined as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2701(a)(4).

Since Reuters is not engaged in renting, selling, or delivering videos through its email newsletters, Plaintiff's receipt of any such newsletter does not make her a consumer under the VPPA. *See Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342-43 (11th Cir. 2017) (plaintiff was not "subscriber" of video content on free CNN app merely because he paid for cable TV separate from app); *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015) (holding same).

Plaintiff, therefore, has not alleged that she is a consumer protected by the VPPA, and Plaintiff's VPPA claim should be dismissed with prejudice.

### D. Plaintiff Does Not Allege That Reuters Disclosed PII.

Under the VPPA, unless a VTSP has provided notice and obtained consent, it is prohibited from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015); *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 279 (3d Cir. 2016) (same). PII includes information which "identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Critically, the information disclosed by a VTSP "must, at the very least, identify a *particular* person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179 (emphasis in original). The Complaint contains no such allegations and should be dismissed.

#### i. *Plaintiff Fails To Allege That Reuters Disclosed Plaintiff's PII.*

Plaintiff alleges only that Reuters shares "one data point" with Facebook: a combination of "digital subscribers' unique FID and video content viewed." (Compl. ¶ 5.) As such, and for two distinct reasons, the Complaint fails to plausibly allege that Reuters disclosed Plaintiff's PII.

**First**, Plaintiff's FID itself is not PII. The FID is an anonymized ID number and does not contain a name, address, email, or other information that, when read alone, identifies a person. Indeed, the Complaint alleges that Plaintiff's FID is "100003190670927." (Compl. ¶ 40.) She then alleges that one would still need to enter that anonymized number into Facebook to find out more information about a person. (Compl. ¶ 5.) This is exactly the kind of "extra step" that courts have found to be outside the realm of PII.

For example, in *Robinson*, Judge Abrams of this District held that Disney did not violate the VPPA in disclosing a similar ID number. The plaintiff argued Disney violated the VPPA because it shared plaintiff's viewing history along with an anonymized serial number to a third party (Adobe), and that this disclosure constituted PII because Adobe could identify plaintiff by "linking these disclosures with existing personal information obtained elsewhere." *Id.* at 180 (internal quotations omitted). The court, consistent with the overwhelming authority across the country, concluded the information actually disclosed "***must itself do the identifying*** that is relevant for purposes of the VPPA (literally, 'information which identifies')—***not*** information disclosed by a provider, ***plus*** other pieces of information collected elsewhere by non-defendant third parties." *Id.* at 182 (emphasis added).[2]

---

[2] *See also id.* at 180 (collecting cases, including *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *10 (D.N.J. July 2, 2014) ("[PII is] information which must, without more, itself link an actual person to actual video materials."); *Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015) (PII not disclosed where the third party to whom an Android ID and viewing history were provided had to "collect information from other sources" to identify the plaintiff; *Locklear v. Dow Jones & Co.*, 101 F. Supp. 3d 1312, 1318 (N.D. Ga. 2015), *abrogated on other grounds*, 803 F.3d 1251 (11th Cir.2015) ("[A] Roku serial number, without more, is not akin to identifying a particular person, and therefore, is not PII.") (quotations omitted); *Eichenberger v. ESPN, Inc.*, C14–463, 2015 WL 7252985 (W.D. Wash. May 7, 2015) (allegation that Adobe "used information gathered from other sources to link plaintiff's Roku device serial number and the record of what videos were watched to plaintiff's identity" failed to state a claim for disclosure of PII under the VPPA); *see also In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *3 (N.D. Cal. Apr. 28, 2014) (finding no VPPA violation because information sent was not personally identifiable without the receiver doing more, such as visiting the user's Hulu profile to uncover the user's identity, where Hulu sent receiver: (1) the Hulu user's unique numerical Hulu User ID; (2) the "GUID," a long alphanumeric string that Hulu used to differentiate between web browsers and that Hulu assigned at random to a browser when it accessed hulu.com; (3) the Hulu "Ad ID," a unique six-digit number that identifies only the advertisement; and (4) the name of the program and any season or episode number).

In rejecting an expansive view of PII, the court in *Robinson* explained: "If nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless." 152 F. Supp. 3d at 181. The court held "Disney's liability turn[ed] only on ***whether the information it disclosed itself identified a specific person***. It did not. Thus, Adobe's ability to identify Robinson by linking this disclosure with other information is of little significance." *Id*. at 184 (emphasis added). Similarly, here, the string of numbers in the FID cannot constitute PII itself.[3]

***Second***, Plaintiff also fails to plausibly allege that *Reuters itself* actually discloses any PII to Facebook. Rather, Plaintiff alleges that is done *by the user's browser*. Specifically, Plaintiff states that, when "a Facebook user with ***one or more personally identifiable FID cookies on their browser*** views Video Media from Reuters.com on the website or app, Reuters.com, through its website code, causes the digital subscribers' identity and viewed Video Media to be transmitted to Facebook ***by the user's browser***." (Compl. ¶ 33 (emphasis added), ¶ 40 (screenshot of data "sent from the device to Facebook"). Put another way: by Plaintiff's own allegations, Reuters is not itself transmitting the FID.[4]

Indeed, the Complaint further concedes that Plaintiff's FID was stored *only on Plaintiff's own computer—i.e.*, *not by Reuters*. (Compl. ¶¶ 33, 40 (showing a line entitled "cookie" which includes an alleged FID (c_user field)). A "cookie," as defined by Merriam-Webster and as the Court is aware, is "a small file or part of ***a file stored on a World Wide Web user's computer***, created and subsequently read by a website server, and containing personal information (such as a

---

[3] Moreover, even if the FID were PII, which it is not, the Complaint fails to allege how typing that number into Facebook would lead to her identification.

[4] Thus, Plaintiff's conclusory allegation at the start of its Complaint that "Defendant shares the Personal Viewing Information – *i.e.* digital subscribers' unique FID and video content viewed – together as one data point to Facebook," (Compl. ¶ 5), is contradicted by Plaintiff's more specific factual allegation that the FID is a cookie on Plaintiff's browser that is submitted to Facebook by the user's browser and device (Compl. ¶¶ 33, 40).

user identification code, customized preferences, or a record of pages visited)." *See* "Cookie" df. 3 at https://www.merriam-webster.com/dictionary/cookie (emphasis added).

As courts have confirmed, the Facebook cookies are placed on user's browsers when they sign up for a Facebook account. The Ninth Circuit recently explained, "When a user creates a Facebook account, more than ten Facebook cookies are placed ***on the user's browser***. These cookies store the user's login ID [FID], and they capture, collect, and compile the referer headers from the web pages visited by the user." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021) (emphasis added). The detailed allegations of the Complaint do not claim otherwise: that is, the Complaint does not assert that Reuters had any role in the placement of the cookies on Plaintiff's browser or that Reuters had any access to Plaintiff's FID.

In sum, Plaintiff fails to allege Reuters discloses any PII—such as her name—to Facebook. Rather, her claims rely solely on the alleged transmission of her FID to Facebook—which, as explained above, is something transmitted by Plaintiff's own browser and can only occur if Plaintiff has given Facebook consent to collect or share such information. *See In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580, 2022 WL 17869218 at *5 (Dec. 22, 2022, N.D. Cal. 2022) ("Meta gives users the ability to control the use of information about their off-Facebook activity (such as activity on third-party websites) for advertising purposes" and "Users can 'disconnect' the off-Facebook activity that has been associated with their account—which prevents the data from being used for personalized advertising"); *see also In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218 at *4 (explaining that "Meta does not, however, 'share information that personally identifies' users with advertisers unless users allow Meta to do so").

Because Plaintiff alleges that Plaintiff's FID is transmitted by her own web browser and device—not by Reuters—and because she does not allege that Reuters discloses any other PII to Facebook, Plaintiff fails to allege that Reuters discloses PII, and the Complaint should be dismissed.

### ii. _Plaintiff Does Not Allege That Reuters Disclosed Plaintiff's Viewing History._

Under the VPPA, Plaintiff must show that Reuters shared "information which identifies a person as having requested or obtained specific video materials or services" from Reuters—in other words, Plaintiff's video viewing history. 18 U.S.C. § 2710(a)(3). Plaintiff cannot plausibly allege that here. Despite Plaintiff's conclusory allegation that Reuters shares Plaintiff's video viewing information, Plaintiff's own "example" of the code Reuters allegedly shared with Facebook contradicts it.

Specifically, Plaintiff cites a URL to a news _article_ on Reuters' website entitled, "IAEA experts 'not going anywhere.'" (Compl. ¶ 39.) Nothing in the Complaint alleges that if a user visited that news article, any information was disclosed about whether Plaintiff—or anyone—requested or obtained any _video_ that appeared below the text article. (Compl. ¶ 39.) Indeed, nothing in the code included in the Complaint states that _any_ video was watched. (Compl. ¶ 40 (referencing title of _article_ in ":path:" data in screenshot).) Therefore, Plaintiff's VPPA claim should be dismissed for failure to allege that Reuters disclosed Plaintiff's video viewing history.

### iii. _Plaintiff Does Not Allege That Reuters Knowingly Disclosed PII._

Plaintiff does not allege facts plausibly stating a claim that Reuters _knowingly_ disclosed PII, as required under the VPPA. 18 U.S.C. § 2710(b)(1). As described _supra_ § I.D.(i), Plaintiff does not allege that Reuters disclosed her PII at all.

Moreover, Plaintiff does not allege that Reuters has any way to know whether she or any other user had an FID, much less what that FID was, whether any browser hosts Facebook cookies, or whether any PII is hosted on a Facebook profile. Therefore, the Complaint does not and cannot plausibly assert that Reuters *knowingly* disclosed her FID, let alone her PII, to Facebook. The Complaint should be dismissed for this reason as well.

iv. <u>The Information That Plaintiff Alleges Reuters Disclosed Is Excluded From The VPPA.</u>

Even if Plaintiff adequately pled that Reuters disclosed PII (which she does not) and did so knowingly (again, which she does not), the information that Reuters allegedly disclosed would be expressly excluded from liability under the VPPA. Specifically, a VTSP "may disclose" PII about a consumer if the disclosure:

(1) is solely of "the names and addresses of consumers";

(2) the VTSP "has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure"; *and*

(3) the disclosure does not identify "the title, description, or subject matter of any video tapes or other audio visual material," provided, however, that such subject matter "may be disclosed if the disclosure is for the exclusive use of marketing goods and services directly to the consumer."

18 U.S.C. § 2710(b)(2)(D)(i)-(ii). Reuters satisfies all three requirements for this exclusion.

**First**, Plaintiff only alleges that Reuters disclosed Plaintiff's "FID [100003190670927] and video viewing information"—which amounts to far less than Plaintiff's "name and address."

**Second**, Reuters clearly and conspicuously provided Plaintiff the opportunity to prohibit such disclosures as set forth in its Privacy Statement, (Andraos Decl., ¶ 4, Ex. 1) which Plaintiff agreed to when she used Reuters.com and when she signed up for an email newsletter. Notably, the "Cookie Policy" section gives Plaintiff clear instructions on how to prohibit her browser from collecting cookies. (Andraos Decl., ¶ 4, Ex. 1, at 15-16.)

***Third***, Reuters did not disclose the title, description, or subject matter of any videos, *supra* § I.D.(ii). But even if it had done so, the disclosure would have been—by Plaintiff's own allegations—for the "exclusive use of marketing goods and services directly to Plaintiff." (Compl. ¶ 32.) Specifically, Plaintiff alleges that the Pixel "enabled Reuters.com and accompanying app to show targeted advertising to its digital subscribers based on the products those digital subscribers have previously viewed on the website or app." (Compl. ¶ 35.) Reuters' Privacy Statement further corroborates this advertising purpose by providing that the Facebook cookies "show[] you ads based on products or services you've viewed or acts you have taken on our (and other) websites and services." (Andraos Decl., ¶ 4, Ex. 1, at 15.)

Plaintiff's VPPA claim, therefore, should be dismissed with prejudice because the information allegedly disclosed by Reuters is excluded under the VPPA.

### E.  <u>Plaintiff Does Not Plead Actual Damages or Legally Sufficient Injury.</u>

### i.  <u>*Plaintiff Does Not Plead Actual Damages as Required Under VPPA.*</u>

Plaintiff does not allege that she was "aggrieved" by Reuters or suffered any "actual damages." Under the VPPA, only a "person aggrieved by any act in violation . . . may bring a civil action in a United States district court." 18 U.S.C. § 2710(c). Such a person may recover "actual damages but not less than liquidated damages in an amount of $2,500." 18 U.S.C. § 2710(c)(2)(A). Plaintiff alleges that because "Plaintiff is entitled by law to privacy in her Personal Viewing Information, Defendant's disclosure of her Personal Viewing Information deprived Plaintiff of the full set of benefits to which she is entitled." (Compl. ¶ 49). This singular, conclusory allegation fails to allege any actual damages from Reuters' alleged conduct and does not pass muster under *Iqbal* and *Twombly*.

Setting that fatal defect aside, Plaintiff also did not suffer the injury that the VPPA was meant to prevent because Plaintiff received written notice and provided consent to Reuters to

collect and share user information with third parties. (Compl. ¶¶ 27-28.) Under the VPPA, an entity may disclose PII to "any person with the informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710. Here, Plaintiff acknowledges—as she must—that Reuters.com has a "Privacy Policy" that applies to all "users" of the site (Compl. ¶¶ 27-28), which necessarily includes any "digital subscribers." But in describing Reuters' Privacy Statement, Plaintiff conveniently ignores that Reuters unambiguously disclosed that Reuters may collect *personally identifiable information* such as "social media user ID," "advertising identifiers, cookie identifiers and information, and similar data," and "content interactions (including searches, views, downloads, prints, shares, streams, and display or playback details), and user journey history (including clickstreams and page navigation, URLs, timestamps, content viewed or searched for, page response times, page interaction information (such as scrolling, clicks, and mouse-overs), and download errors)." (Andraos Decl., ¶ 4, Ex. 1, at 3.) The Privacy Statement further discloses Reuters' relationships with third parties like Facebook, specifically stating that Reuters "may work with certain third party social media providers . . . [that] may be able to collect information about you, including your activity on our Services," and "[w]e may share your personal information with advertisers . . . [that] may also target advertisements on third party websites based on cookies or other information indicating previous interaction with us and/or our Services." (*Id.* at 7-8.) In addition to the above, the Privacy Statement makes clear that users like Plaintiff "can control cookies and tracking tools" and includes a link to information about "how to manage how we and our partners use cookies and other tracking tools." (*Id.* at 9.). Finally, by using Reuters' services, Plaintiff "acknowledge[d] and agree[d] that [Reuters] may and will collect, use, transfer, disclose, and otherwise process your personal information as described in our Privacy Statement." (Andraos Decl., ¶¶ 5, 6, Exs. 2, 3.)

Despite this notice, Plaintiff alleges that Reuters should be liable under the VPPA because Reuters did not provide the required VPPA disclosures in a stand-alone, separate form. (*See* Compl. ¶¶ 2, 49.) But Plaintiff has failed to allege that Reuters' inclusion of the VPPA-required disclosures in its Privacy Statement, rather than in a stand-alone document, caused Plaintiff to suffer actual damages—a fatal defect to Plaintiff's claim here. 18 U.S.C. § 2710(c)(1)-(2) (requiring that VPPA plaintiffs to be "aggrieved" and to have suffered "actual damages"). Indeed, Plaintiff has *not* alleged that (i) she was prevented from reviewing the Privacy Statement, (ii) did not understand it, or (iii) that it was misleading or fraudulent. Therefore, the reasonable inference from Plaintiff's allegations is that even if Reuters presented the disclosures in a stand-alone, separate form, Plaintiff still would have signed up for a Reuters email newsletter and viewed news articles on Reuters.com.

ii. *Any "Injury" Plaintiff Allegedly Suffered Is Not Within the "Zone of Interests" The VPPA Protects.*

Even if Plaintiff had alleged actual damages (which she did not), the purely procedural violation that Plaintiff alleges is not within the "zone of interests" that Congress aimed to protect when it passed the VPPA. The Supreme Court has held that a plaintiff cannot assert a federal statutory claim unless that plaintiff has suffered an injury falling within the "zone of interests" protected by the statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014). The zone-of-interests test "applies to all statutorily created causes of action." *Id*. at 129. Moreover, "Congress is presumed to legislate against the background of the zone-of-interests limitation, which applies unless it is expressly negated." *Id.* (quotation marks and alteration omitted). To determine whether "a plaintiff comes within 'the zone of interests,'" courts must evaluate "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id*. at 127 (quotation marks omitted). The Supreme Court explained that "[w]e do not ask

whether in our judgment Congress should have authorized [the plaintiff's] suit, but whether Congress *in fact did so*." *Id.* at 128 (emphasis in original). "[A] direct application of the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue." *Id.* at 134.

Here, Plaintiff ostensibly alleges that any injury she suffered arises because the required disclosures under VPPA were not in a stand-alone document—despite Plaintiff's awareness that the Privacy Statement which contained such disclosures were readily available to her and governed any user's use of Reuters.com. (Compl. ¶¶ 27-29.) That so-called "injury" is not within the zone-of-interest for a VPPA claim. As courts have made clear, Congress's intent in passing the VPPA was to protect the dissemination of information that consumers lack control over. The Ninth Circuit explained that the VPPA "evinces the principle that protection is merited when the consumer lacks control over the dissemination of the information at issue." *Mollett v. Netflix, Inc*., 795 F.3d 1062, 1065–66 (9th Cir. 2015). Judge Abrams further noted that the VPPA's practical "impetus was the publication in 'a weekly newspaper in Washington' of a 'profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store.'" *Robinson*, 152 F. Supp. 3d at 179 (citing Sen. Rep. 100–599, at 5 (1988)).

Such potential harms are not present here. Plaintiff was provided with notice of, and necessarily consented to, Reuters disclosing information to third parties. Moreover, Reuters explicitly notified users how they can "control cookies and tracking tools," and provided information showing how users could "restrict the use of cookies or completely prevent them from being set" on users' browsers. Accordingly, Reuters has duly reflected Congress's intent in passing the VPPA—to protect the dissemination of information that consumers lack control over.

In addition, to show that an injury falls within the zone of interests intended by Congress, a plaintiff must show that "the harm alleged has a sufficiently close connection to the conduct the statute prohibits"—in other words, to determine whether there is "proximate cause." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017) (quoting *Lexmark*, 134 S. Ct. at 1390). As the Supreme Court made clear, "in all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause." *Id.* Yet here, Plaintiff fails to allege that she has suffered any *actual* harm from not receiving the required disclosures in a stand-alone document, as opposed to in the Privacy Statement. Consequently, Plaintiff has not alleged facts showing proximate cause between Reuters' alleged failure to provide the required disclosures separately from its Privacy Statement and any injury within the VPPA's zone-of-interests. For this reason, Plaintiff's VPPA claim should be dismissed.

## II.   THE VPPA, AS APPLIED TO REUTERS, VIOLATES THE FIRST AMENDMENT.

As further detailed *infra* § III, the VPPA imposes restrictions on protected commercial speech. Consequently, the restricting language within the VPPA must not be "unconstitutionally vague or its prohibitions too broad in their sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973).

Here, the VPPA is overbroad because it fails to provide a curtailed definition of a "video tape service provider." Rather than make clear the types of entities regulated by the statute, the statute could be read to allow for regulation of any "business" that "delivers" "audio visual materials." 18 U.S.C. § 2710(a)(4). If so applied to Reuters, a news organization publishing and distributing information in the global public interest, the statute's extreme restriction on the sharing of video viewing information—a restriction without regard for free speech rights or for all the potential purposes of such sharing—cannot overcome First Amendment scrutiny. Indeed, this

position has been asserted by the United States, which argued that the VPPA is facially constitutional *specifically because* it does not apply to news organizations like Reuters:

> The VPPA prohibits a specific type of speech: disclosures by proprietors revealing certain products that individuals requested or obtained. *See* 18 U.S.C. § 2710(b). On its face, the statue applies only to disclosure of actual or proposed transactions—whether a person "requested or obtained specific video materials or services," *id.* § 2710(a)(3)—by a business—specifically, a "video tape service provider" "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," *id.* § 2710(a)(4). And it includes reasonable, limited exceptions to account for the preferences of the consumer, *see id.* § 2710(b)(2)(A) & (B); the needs of law enforcement entities or courts, *see id.* § 2710(b)(2)(C) & (F); and the practicalities of running a business, *see id.* § 2710(b)(2)(D) & (E). ***The reach of the statute is thus demonstrably constrained. Notably, it does not apply to news organizations, advocacy groups, or other entities whose mission is to publicize information of public import.***

*See Stark v. Patreon*, No. 3:22-cv-03131, at 10-11 (N.D. Cal. Dec. 5, 2022) (ECF No. 49-1) (emphasis added).

This Court, therefore, should find that the VPPA, as applied to Reuters, is unconstitutional.

## III.    CERTAIN PARTS OF THE VPPA ARE CONSTITUTIONALLY DEFECTIVE ON THEIR FACE.

The VPPA is unconstitutionally defective because it imposes a disproportionately burdensome restraint on protected commercial speech, specifically, "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710. To survive First Amendment scrutiny, such a restriction must meet three conditions: (1) the government must have a "substantial interest in regulating the speech," (2) the regulation must "directly and materially advance[ ] that interest," and (3) the regulation must be "no more extensive than necessary to serve the interest." *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980). Moreover, the restricting "language may not be unconstitutionally vague or its prohibitions too broad in their

sweep, failing to distinguish between conduct that may be proscribed and conduct that must be permitted." *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973). The VPPA does not satisfy these conditions.

At the outset, the government cannot demonstrate a "substantial interest" in a blanket restriction on the disclosure of personally-identifiable video viewing information of any business that delivers videos, in particular because Congress never intended such a sweeping restriction. *Supra* § II. And there is no "persuasive evidence" that the VPPA's restrictions are "part of a long tradition of proscription." *Brown v. Entertainment Merchants Assoc.*, 131 S.Ct. 2729, 2734 (2011).

Additionally, the vague terms in the VPPA have resulted in an explosion of litigation, primarily against companies whose businesses look nothing like the brick and mortar "video-tape service provider" Congress intended to regulate. Left undefined in the statute, the expansive dictionary definitions of words like "business" and "delivery"[5] render the scope of restricted companies virtually limitless, and certainly unmoored from the interests expressed by Congress.

Last, the onerous consent process set out in section 2710 of the VPPA—which requires consent for disclosure to be collected is (i) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the consumer (I) is given at the time the disclosure is sought; or (II) is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner; and (iii) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the

---

[5] Indeed, "business" is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood" or "a commercial or sometimes an industrial enterprise" ("business" (def. 1a, 1b), https://www.merriam-webster.com/dictionary/business), while "delivery" is defined as "the act or manner of delivering something." *See* "delivery" (def. 1), https://www.merriam-webster.com/dictionary/delivery; *see also* "delivery" (def. 5), defined as "the act or manner of giving or sending forth," https://www.dictionary.com/browse/delivery.

consumer's election—is far more burdensome than necessary to serve the relevant government interest here. *See Daniel v. Cantrell*, 375 F.3d 377, 383-384 (6th Cir. 2004).

It would be within the Court's power to invalidate the onerous elements of the consent requirement, including but not limited to 18 U.S.C. § 2710(b)(2)(B)(i)-(iii), drawing it back to the type of simple written informed consent obtained through regular means. *See Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010); *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2348–56 (2020).

## CONCLUSION

For the foregoing reasons, Defendant Thomson Reuters Corporation respectfully requests that the Court dismiss Plaintiff's Class Action Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and for all other and further relief as this Court deems just.

Dated: January 18, 2023                                 Respectfully submitted,

                                                        **BAKER & HOSTETLER LLP**

                                                        /s/*Bonnie Keane DelGobbo*

                                                        Eric R. Fish
                                                        45 Rockefeller Plaza
                                                        New York, NY 10111
                                                        Tel: 212.589.4200
                                                        Fax: 212.589.4201
                                                        efish@bakerlaw.com

                                                        Joel Griswold (*pro hac vice*)
                                                        200 South Orange Avenue, Suite 2300
                                                        Orlando, Florida 32801-3432
                                                        Tel: 407.649.4088
                                                        Fax: 407.841.0168
                                                        jcgriswold@bakerlaw.com

                                                        Bonnie Keane DelGobbo (*pro hac vice*)
                                                        Amy L. Lenz (*pro hac vice*)
                                                        One North Wacker Drive, Suite 4500
                                                        Chicago, Illinois 60606

Tel: 312.416.6200
Fax: 312.416.6201
bdelgobbo@bakerlaw.com
alenz@bakerlaw.com

*Attorneys for Reuters News & Media Inc.,
sued herein as Thomson Reuters Corporation*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)** was served on this 18th day of January 2023, via the Court's electronic filing system on all counsel of record.

*/s/Bonnie Keane DelGobbo*