UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
CHRISTINA LESLIE, individually and on behalf of all others similarly situated,

        Plaintiff,

  -against-

THOMSON REUTERS CORPORATION,

        Defendant.
---------------------------------------------------------X

CASE NO. 1:22-CV-07936-JHR

**ORAL ARGUMENT REQUESTED**

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)**

**(FILED IN REPLY TO ECF NOS. 22-23, 27, 35)**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................1

    I.    REUTERS IS NOT A "VIDEO TAPE SERVICE PROVIDER." ..........................1

    II.    PLAINTIFF IS NOT A "CONSUMER" PROTECTED BY THE VPPA. .............3

    III.    REUTERS DID NOT DISCLOSE PLAINTIFF'S PII. ..........................................4

        a.    Plaintiff Does Not Adequately Allege That Reuters Disclosed Plaintiff's PII. ...............................................................................................4

        b.    Plaintiff Does Not Adequately Allege That Reuters Knowingly Disclosed PII. ..................................................................................................7

    IV.    REUTERS' ALLEGED DISCLOSURES WERE EXCLUDED UNDER THE VPPA ...............................................................................................................7

    V.    PLAINTIFF DOES NOT PLEAD ACTUAL DAMAGES OR LEGALLY SUFFICIENT INJURY ............................................................................................8

    VI.    THE VPPA, AS APPLIED TO REUTERS, VIOLATES THE FIRST AMENDMENT ........................................................................................................9

    VII.    CERTAIN PARTS OF THE VPPA ARE CONSTITUTIONALLY DEFECTIVE ON THEIR FACE. ....................................................................................10

CONCLUSION......................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ambrose v. Bos. Globe Media Partners LLC*,
   No. CV 21-10810-RGS, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) ..........................3, 4, 7

*Belozerov v. Gannett Co., Inc.*,
   No. 22-10838-NMG, 2022 WL 17832185 (D. Mass. Dec. 20, 2022) ......................................4

*Brown v. Entertainment Merchants Assoc.*,
   564 U.S. 786 (2011)..............................................................................................................10

*Czarnionka v. Epoch Times Ass'n, Inc.*,
   No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022)..............................3

*Lebakken v. WebMD, LLC*,
   No. 1:22-CV-644-TWT, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022) ...................................4

*Martin v. Meredith Corp.*,
   No. 22cv4776(DLC), 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) ........................................6

*New York Times Co. v. United States*,
   403 U.S. 713 (1971)................................................................................................................9

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016)....................................................................................................5

*Ohr Somayach/Joseph Tanenbaum Educ. Ctr.*,
   483 F. Supp. 3d 195 (S.D.N.Y. 2020)...................................................................................10

*Regan v. Vill. of Pelham*,
   No. 19 Civ. 7987 (NSR), 2021 WL 1063320 (S.D.N.Y. Mar. 19, 2021) .................................6

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015)......................................................................................5

*Stark v. Patreon*,
   No. 3:22-cv-03131 (N.D. Cal. Dec. 5, 2022)...........................................................................3

*United States v. Jones*,
   965 F.3d 190 (2d Cir. 2020)....................................................................................................6

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...................................................................................2

**Statutes**

18 U.S.C. § 2721 ........................................................................................................................6

15 U.S.C. § 2613(c)(1)(B)(ii) ....................................................................................................6

18 U.S.C. § 2710 ........................................................................................................................1

18 U.S.C. § 2710(a)(1) ..............................................................................................................4

18 U.S.C. § 2710(b)(2)(D)(i)-(ii) ..............................................................................................8

18 U.S.C. § 2710(c) ...................................................................................................................8

42 U.S.C. § 9604(e)(7)(E)(ii) ....................................................................................................6

42 U.S.C. § 11042(b)(2) ............................................................................................................6

**Other Authorities**

U.S. Const., Amend. I ........................................................................................................1, 9, 10

https://www.merriamwebster.com/dictionary/disclosure (last visited Mar. 29, 2023) ................................................................................................................................5

S.Rep. No. 100–599 ...................................................................................................................2

# INTRODUCTION

Notwithstanding the numerous ways Plaintiff tries to argue she has a cognizable VPPA claim, the Complaint should be dismissed in its entirety, with prejudice.

*First*, Reuters, which displays on its website short, fact-based news clips about newsworthy matters such as the war in Ukraine, is simply not a "video tape service provider" under the VPPA. Try as the Plaintiff might to suggest otherwise, the statutory text, the legislative history, and most of all common sense say differently.

*Second*, Plaintiff is not a "consumer" under the VPPA. This case is about news videos on Reuters.com, and Plaintiff never signed up for a Reuters.com account. Rather, she signed up for a free email newsletter, which has no video content and is unconnected to Reuters.com.

*Third*, Reuters did not disclose any personally identifying information ("PII") to Facebook, let alone users' video viewing information. An anonymized 15-digit "FID" such as 100003190670927 is simply not PII.

*Further*, Plaintiff fails to meaningfully respond to Reuters' other arguments, namely that any disclosures allegedly made by Reuters were excluded under the VPPA; Plaintiff suffered no actual damages or injury; and the VPPA as applied here violates the First Amendment.

# ARGUMENT

## I.    REUTERS IS NOT A "VIDEO TAPE SERVICE PROVIDER."

*Not "Similar" AV Materials.* As explained in Reuters' opening brief, the VPPA only applies to a "video tape service provider." In this case, there are two types of VTSPs—a defendant that rents, sells, or delivers either (1) "prerecorded video cassette tapes" or (2) "similar audio visual materials." 18 U.S.C. § 2710. Plaintiff concedes, as she must, that Reuters does not fall within the first category. (Opp. at 3.) However, Plaintiff erroneously argues that Reuters falls within the second category, *i.e.*, that Reuters rents, sells, or delivers "similar audio-visual materials." (Opp.

1

at 3-5.) To support this view, Plaintiff misleadingly suggests Reuters has argued that the VPPA does not apply because Reuters delivers video content digitally as opposed to a "brick-and-mortar store." (Opp. at 4.) Not so.

In truth, Reuters is not a VTSP because the nature of the videos on its website—short news clips—are simply not "similar" to the "prerecorded video cassette tapes" covered by the statute. Indeed, in describing what kinds of content were "similar," Congress cited laser-discs, open-reel movies, and motion pictures. (*See* S.Rep. No. 100–599 at 12.) In other words, short news clips published by one of the world's oldest news organizations are not "similar" to full-length entertainment options available at video stores in 1988 when the statute was passed.

***Not "Engaged In the Business Of."*** Plaintiff also fails to meaningfully address the fact that Reuters is not "engaged in the business of" delivering video content for VPPA purposes. (Opp. at 5.) Instead, Plaintiff asserts in a conclusory manner that "there can be no doubt that a media giant like Reuters qualifies as a video tape service provider." (Opp. at 5.) But the law demands more. In *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017), which Plaintiff cites to argue that Reuters is a VTSP (Opp. at. 5), the court made clear that "the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose."

Whether based on the law or simply common sense, the defendant in *In re Vizio* was dispositively different from Reuters. Rather than provide short news clips, Vizio is a company that sells its Smart TVs as "a passport to a world of entertainment, movies, TV shows and more," specifically "designed to stream video content" and priced accordingly. *Id.* at 1222. Plaintiff has not made—and could not make—any such allegations in this case. Furthermore, the other two cases Plaintiff cites on this issue are non-binding, inapposite, and wrongly decided. In *Epoch*

2

*Times*, the defendant's argument focused on whether the plaintiff had sufficiently alleged the content at issue was "prerecorded"—an issue Reuters did not raise in its opening brief. *See Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022). *Epoch Times* also involved allegations that the defendant provided on its website not only news programs but also "television shows, documentaries, movies, and other audiovisual content." *See id.* Similarly, while Plaintiff merely alleges that Reuters provided "video content" (Compl. ¶ 13.), *Boston Globe* involved detailed allegations about how the Boston Globe "creates, hosts, and disseminates hundreds, if not thousands, of videos…as stand-alone content, as supplements to articles, and as content sponsored by advertisers." *Ambrose v. Bos. Globe Media Partners LLC*, No. CV 21-10810-RGS, 2022 WL 4329373, at *1 (D. Mass. Sept. 19, 2022).[1] And unlike users of Reuters.com, which is a free site, "[t]o access the Globe's video content, individuals must pay for a digital subscription." *Id.* No such allegations are present here.

**Does Not Apply to News Organizations.** Plaintiff finally contends the U.S. Government's intervening brief in *Stark v. Patreon*, No. 3:22-cv-03131, at 11 (N.D. Cal. Dec. 5, 2022) (ECF No. 49-1) ("*Stark Brief*"), means "only that the VPPA would not prevent Reuters from reporting on an individual's video viewing history." (Opp. at 6.) The U.S. Government's brief, however, does not draw this distinction and instead simply says that the VPPA does not apply to news organizations. *Stark Brief*, at 11.

## II.   PLAINTIFF IS NOT A "CONSUMER" PROTECTED BY THE VPPA.

To count as a "consumer" under the VPPA, Plaintiff asserts she is a "subscriber" to Reuters.com because she allegedly signed up for a free *email newsletter* from Reuters. (Opp. at 7-8.) But Plaintiff notably does not dispute there is no connection between her receipt of that free

---

[1]   *Boston Globe*'s analysis regarding whether the defendant was a "video tape service provider" was limited to a single sentence and did not cite any case law. 2022 WL 4329373, at *2.

3

email newsletter and any video content she separately and independently accessed on the Reuters.com website. (Opp. at 7.) Instead, Plaintiff argues that she simply need not allege any such connection, citing *Lebakken v. WebMD, LLC*, No. 1:22-CV-644-TWT, 2022 WL 16716151, at *3 (N.D. Ga. Nov. 4, 2022). *Lebakken*, however, held the plaintiff was a consumer by virtue of her receipt of WebMD's newsletter because "Lebakken alleges that the e-newsletter provides subscribers with doctor-approved health tips, which WebMD monetizes by selling advertising space alongside those tips to generate revenue" and because "Lebakken alleges that WebMD's e-newsletter 'features videos that link back to [its] website.'" *Id.*[2]

Here, unlike in *Lebakken*, Plaintiff does not allege her email newsletter contains video content, or even ads, or anything that Reuters profits from. In other words, Plaintiffs' newsletter subscription is not related to any video goods or services. Rather, Plaintiff's allegations regarding Reuters' video content are all connected to the Reuters.com website, which Plaintiff does not allege she subscribes to. (Opp. at 7.) Consequently, Plaintiff has not alleged she is subscribing to any goods or services "from a video tape service provider" by virtue of her newsletter subscriptions, and consequently is not a "consumer" under the VPPA. *See* 18 U.S.C. § 2710(a)(1).

## III.   REUTERS DID NOT DISCLOSE PLAINTIFF'S PII.

Generally speaking, the VPPA prohibits the "knowing disclosure" of a person's PII. But try as she might, Plaintiff cannot show that Reuters disclosed Plaintiff's PII, let alone "knowingly."

### a.   **Plaintiff Does Not Adequately Allege That Reuters Disclosed Plaintiff's PII.**

***Facebook ID.*** Plaintiff argues that because some district courts have found that a Facebook ID ("FID") is PII, this Court should reflexively do the same. (Opp. at 8-9.) However, as Reuters

---

[2]   The other cases that Plaintiff cites do not even address whether the alleged "subscription" must have some nexus to video content. *See Belozerov v. Gannett Co., Inc.*, No. 22-10838-NMG, 2022 WL 17832185, at *3 (D. Mass. Dec. 20, 2022) (addressing whether a person must pay money in order to qualify as a "subscriber"); *Ambrose*, 2022 WL 4329373, at *1-2 (noting that plaintiff alleges users must pay for a digital subscription in order to access video content, and concluding that plaintiff had sufficiently alleged he was a paying consumer).

explained in its opening brief, courts in this District have applied the standard adopted by the Third Circuit in *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 279 (3d Cir. 2016), which requires that the information disclosed "must itself do the identifying," ***not*** simply "information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182 (S.D.N.Y. 2015). Under this standard, only "information that would readily permit an ***ordinary person*** to identify a specific individual's video-watching behavior" can qualify as PII under the statute. *Id.* at 267 (emphasis added). Cases which have held that the FID can constitute PII have misapplied the standard from *In re Nickelodeon*. Here, Plaintiff herself alleges the FID is only a string of numbers assigned by Facebook—specifically, "100003190670927" (Compl. ¶¶ 33, 40). Accordingly, she has not alleged—and could not plausibly allege—that this 15-digit anonymized FID would "readily permit an ***ordinary person***" to identify her video-watching behavior.

    ***Plaintiff's Browser.***  Regardless of whether an FID is PII, Plaintiff does not and cannot allege that Reuters disclosed Plaintiff's PII because Reuters itself does not disclose Plaintiff's FID. Plaintiff does not dispute that the FID is transmitted *by her own browser*. Instead, Plaintiff tries to argue that Reuters "opened a 'digital door' by installing the Pixel and freely permitting Ms. Leslie's video viewing history paired with her Facebook ID to be transmitted to Facebook." (Dkt. 35 at 9.) "Opening a digital door" is not the same as "disclosure," which means "the act or an instance of disclosing," and Plaintiff has not alleged (and cannot allege) *Reuters itself* has disclosed anything. *See* "disclosure," https://www.merriamwebster.com/dictionary/disclosure (last visited Mar. 29, 2023). If Congress had intended for acts broader than "disclosure" to be covered by the statute, Congress could have included broader terms—such as "otherwise make available"—as

5

Congress has repeatedly done in other statutes.[3] Without any indication in the statutory text that Congress meant more than "disclosure," this Court must take the plain meaning of disclosure and find that Reuters itself did not disclose PII. *See United States v. Jones*, 965 F.3d 190, 194 (2d Cir. 2020) ("Our starting point in statutory interpretation is the statute's plain meaning. . . .").

***Not Video Viewing Information.*** For its VPPA claim to survive, Plaintiff must show that Reuters shared Plaintiff's video viewing information with a third party. But Reuters did no such thing—rather, the Complaint itself shows that Reuters only allegedly shared with Facebook that a news article had been viewed, *not* that any video was requested or obtained. (Br. at 12.) For instance, assuming the Complaint's allegations as true, the Pixel would transmit the fact that a user visited a news article page on Reuters.com (*e.g.*, a text story about the Ukraine invasion), regardless of whether that page contained *any video at all*.

Significantly, Judge Cote recently dismissed a VPPA claim on precisely this basis, holding that "merely disclosing the name of the webpage does not indicate that a website visitor requested or obtained specific video materials on that webpage." *Martin v. Meredith Corp.*, No. 22cv4776(DLC), 2023 WL 2118074, at *3 (S.D.N.Y. Feb. 17, 2023). Perhaps realizing that *Martin* requires dismissal of the Complaint, Plaintiff improperly attempts to introduce new materials and factual assertions outside the pleadings. (Opp. at 9-11, Ex. A.) On a motion to dismiss, these should be ignored. *Regan v. Vill. of Pelham*, No. 19 Civ. 7987 (NSR), 2021 WL 1063320, at *4 (S.D.N.Y. Mar. 19, 2021) (courts cannot "consider[] any factual allegations that were introduced for the first time in . . . Plaintiff's opposition"). Even if permitted to be introduced at this stage, Plaintiff's new

---

[3] *See, e.g.*, 18 U.S.C. § 2721 ("A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose *or otherwise make available* to any person or entity: (1) personal information….") (emphasis added); 15 U.S.C. § 2613(c)(1)(B)(ii) (requiring determination "that the information is not required to be disclosed *or otherwise made available* to the public…" (emphasis added); 42 U.S.C. § 11042(b)(2) (requiring showing that "information is not required to be disclosed, *or otherwise made available*, to the public…") (emphasis added); 42 U.S.C. § 9604(e)(7)(E)(ii) (requiring showing that "information is not required to be disclosed, *or otherwise made available*, to the public…").

materials and assertions do not contradict her original allegations that the information sent concerns the name of the *article* on the page. Moreover, Plaintiff's new assertion that "the 'ViewContent' Pixel does not appear in a user's network activity until the video content begins" (Opp. at 11) does not even come close to alleging that the transmittal of such information "would readily permit an ***ordinary person*** to identify a specific individual's video-watching behavior."

        **b.**        <u>**Plaintiff Does Not Adequately Allege That Reuters *Knowingly* Disclosed PII.**</u>

As set forth in the opening brief, Plaintiff has not alleged facts plausibly demonstrating Reuters *knowingly* disclosed any PII. (Br. at 12-13.) And tellingly, in her Opposition, Plaintiff does not dispute that Reuters has no way to know whether Plaintiff or any other user had an FID—much less what that FID was; whether any browser hosts Facebook cookies; or whether any PII is hosted on a Facebook profile. Instead, Plaintiff simply cites *Boston Globe*, and conclusively asserts her allegations "are adequate." (Opp. at 11.) However, *Boston Globe* does not discuss any of the arguments Reuters has raised on this point.[4]

**IV.    REUTERS' ALLEGED DISCLOSURES WERE EXCLUDED UNDER THE VPPA.**

As explained previously, the VPPA explicitly permits some disclosures of PII—"names and addresses of consumers"—if certain conditions are met. (Br. at 13-14.) But the PII allegedly shared—Plaintiff's Facebook ID—is far more anonymous than Plaintiff's name and address. In response, Plaintiff contends that disclosing a user's Facebook ID "goes far beyond 'name and address'" because a Facebook profile contains a "trove of personally identifiable data." (Opp. at 12.) But as set forth *supra* § III.a, Reuters does *not* disclose an FID. And even if Reuters did itself

---

[4] In *Boston Globe*, the court found that plaintiff plausibly alleged Boston Globe knowingly shared plaintiff's PII where plaintiff alleged that Boston Globe "disclosed Ambrose's Facebook ID, email address, first name, last name, and mailing address to Facebook, as well as information about the videos Ambrose has accessed on the Globe website." *Bos. Globe*, 2022 WL 4329373, at *1. No such allegations are present in this case, where Plaintiff does not plausibly allege that Reuters shared her FID, let alone any other identifying information such as a name, telephone number, or mailing address.

7

share an FID with Facebook, the FID is, in Plaintiff's own admission, an anonymized 15-digit string of numbers—one that in and of itself says nothing about its user, and is already in the possession of Facebook. (Opp. at 12; Compl. ¶ 34.)

Plaintiff also does not substantively address the fact that Reuters provided Plaintiff "the opportunity, in a clear and conspicuous manner, to prohibit" the disclosure in its Privacy Policy, and that the alleged disclosure was "for the exclusive use of marketing goods and services directly to the consumer." 18 U.S.C. § 2710(b)(2)(D)(i)-(ii). Plaintiff's entire response to these arguments is merely that "Defendant can't satisfy either of these additional requirements." (Opp. at 11.) As explained previously (Br. at 13-14), Reuters has met the requirements of this statutory exception.

V. **PLAINTIFF DOES NOT PLEAD ACTUAL DAMAGES OR LEGALLY SUFFICIENT INJURY.**

As Reuters explained in its opening brief (Br. at 14-18), Plaintiff has not sufficiently alleged she is "aggrieved" or suffered "actual damages" as explicitly required by the statute. 18 U.S.C. § 2710(c) (identifying prerequisites for bringing suit). Notably, the cases Plaintiff relies upon to argue she has alleged actual damages are inapposite here, because those courts were addressing challenges to a plaintiff's Article III standing. (Opp. at 13-14 (collecting cases).) Plaintiff also fails to respond to Reuters' argument that its Privacy Policy explicitly informed users that it may collect personally identifiable information and share that information for marketing purposes. (Br. at 15.) That is precisely the conduct on which Plaintiff bases her VPPA claim, which concerns the alleged disclosure of video viewing information to Facebook for the purpose of targeted advertising. Plaintiff has not alleged that (i) she was prevented from reviewing the Privacy Policy, (ii) did not understand it, or (iii) that it was misleading or fraudulent. Consequently, she has not alleged any actual damages, and does not fall within the VPPA's "zone of interests."

8

## VI. THE VPPA, AS APPLIED TO REUTERS, VIOLATES THE FIRST AMENDMENT.

Plaintiff argues the VPPA can be applied to Reuters consistent with the First Amendment because "[t]he VPPA does not impinge on Reuters's right to report on an individuals' video viewing history, it only prohibits it from improperly sharing that information with a third party." (Opp. at 16-17.) As explained *supra* § I, this distinction is not supported by facts or the law.

Moreover, Plaintiff's glib assertion that her allegations "in no way relate[] to [Reuters] carrying out its mission as a 'news organization'" (Opp. at 16) wholly ignores what she has pled in her own Complaint. Plaintiff alleges Reuters sends information about Plaintiff's video viewing history to Facebook so that Reuters can "show targeted advertising to its digital subscribers based on the products those digital subscriber's [*sic*] had previously viewed on [Reuters'] website or app, including Video Media consumption." (Compl. ¶ 35.) The "products" and "Video Media" to which Plaintiff refers are *news articles* and *news video clips*. (Compl. ¶ 39.) Indeed, the Complaint describes Reuters as "one of the leading news sources in the world" (Compl. ¶ 13), and the example of Reuters.com content that Plaintiff includes in her Complaint is a webpage with reporting about a nuclear power plant in Ukraine (Compl. ¶ 39). Thus, accepting Plaintiff's own allegations as true, applying the VPPA to Reuters places restrictions on how Reuters is able to deliver the news—and restricts Reuters from targeting news stories to Plaintiff and other individuals based on the interests they have demonstrated through previous news they have browsed on Reuters.com. "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971). "The Government 'thus carries a heavy burden of showing justification for the imposition of such a restraint.'" *Id.* As applied here, the VPPA does not meet this standard.

Citing various cases, Plaintiff also argues that "it cannot reasonably be disputed that the VPPA has been previously applied to 'news organizations.'" (Opp. at 17.) However, none of the cases even involved a First Amendment challenge to the VPPA, and are thus inapposite here.

### VII. CERTAIN PARTS OF THE VPPA ARE CONSTITUTIONALLY DEFECTIVE ON THEIR FACE.

As set forth in Reuters' opening brief, certain parts of the VPPA are constitutionally defective on their face. (Br. at 19-21.) In response, Plaintiff contends that because a different defendant in a different lawsuit (*Stark v. Patreon, Inc*.) chose to concede the government has a compelling interest in protecting consumer privacy, somehow this means it is a fact. (Opp. at 18.) Reuters concedes no such thing, and rather explicitly detailed in its opening brief why the government has not shown it has a compelling interest in restricting the disclosure of personally-identifiable video viewing information of any business that delivers videos, because there is no "persuasive evidence" that the VPPA's restrictions are "part of a long tradition of proscription." *Brown v. Entertainment Merchants Assoc*., 564 U.S. 786, 792 (2011).

Plaintiff neither provides a counter argument for why the government has a compelling interest in protecting the disclosure of personally-identifiable video viewing information of any business that delivers videos, nor explains why the onerous consent requirements under the VPPA are not more burdensome than necessary to serve such a supposed interest. Plaintiff's failure to respond to Reuters' arguments results in waiver. *See, e.g.*, *Ohr Somayach/Joseph Tanenbaum Educ. Ctr*., 483 F. Supp. 3d 195, 206 (S.D.N.Y. 2020).

### **CONCLUSION**

For the foregoing reasons and those set forth in its opening brief, Reuters respectfully requests that this Court dismiss Plaintiff's Class Action Complaint with prejudice and for all other and further relief as this Court deems just.

Dated: March 29, 2023	Respectfully submitted,

**BAKER & HOSTETLER LLP**

/s/*Bonnie Keane DelGobbo*
Eric R. Fish
45 Rockefeller Plaza
New York, NY 10111
Tel: 212.589.4200
Fax: 212.589.4201
efish@bakerlaw.com

Joel Griswold (*pro hac vice*)
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
Tel: 407.649.4088
Fax: 407.841.0168
jcgriswold@bakerlaw.com

Bonnie Keane DelGobbo (*pro hac vice*)
Amy L. Lenz (pro hac vice)
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Tel: 312.416.6200
Fax: 312.416.6201
bdelgobbo@bakerlaw.com
alenz@bakerlaw.com

*Attorneys for Reuters News & Media Inc., sued herein as Thomson Reuters Corporation*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6) was served on this 29th day of March 2023, via the Court's electronic filing system on all counsel of record.

/s/*Bonnie Keane DelGobbo*